UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**FILED**
Clerk's Office
USDC, Mass,
Date _3-12-04_
By
Deputy Clerk

RBM TECHNOLOGIES, INC.,

      Plaintiff,

      v.

ALBERT L. LASH, IV,

      Defendant.

Civil Action No.  04CV10062GAO

**ANSWER,
AFFIRMATIVE
DEFENSES, AND
COUNTERCLAIMS**

ALBERT L. LASH, IV,

      Counterclaim Plaintiff,

      v.

RBM TECHNOLOGIES, INC.,

      Counterclaim Defendant.

      Defendant Albert L. Lash ("Lash"), as and for his Answer to the Complaint filed by Plaintiff RBM Technologies, Inc. ("RBM"), respectfully alleges as follows:

      1.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

      2.     Admits the allegations contained in paragraph 2 of the Complaint.

      3.     Admits that this Court has personal jurisdiction over Lash pursuant to G.L. c. 223A §2, based on Lash's domicile in the Commonwealth of Massachusetts.

      4.     Admits that Plaintiff purports to invoke venue under the statute cited in paragraph 4 of the Complaint; admits that venue is proper in the Commonwealth of

Massachusetts, Middlesex County, but should be in Federal Court due to the underlying issues of federal copyright law intertwined with this dispute that require resolution before Federal Court.

5.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint.

6.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint.

7.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint.

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint.

9.    Denies that RBM developed a working prototype of a software program named Merchandising Manager in the winter and spring of 2001; denies the remaining allegations contained in paragraph 9 of the Complaint.

10.    Denies that RBM has been marketing the prototype software to customers nationwide; admits that RBM has been marketing the software program authored by Lash to customers nationwide.

11.    Denies the allegations contained in paragraph 11 of the Complaint. To the extent that Plaintiff intends to rely on the existence of a written employment contract (the "Contract"), Defendant specifically denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of any specific language of said Contract.

12.    Denies the allegations contained in paragraph 12 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the

alleged Contract.

13.    Denies the allegations contained in paragraph 13 of the Complaint.

14.    Denies the allegations contained in paragraph 14 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

15.    Denies the allegations contained in paragraph 15 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

16.    Denies the allegations contained in paragraph 16 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

17.    Denies the allegations contained in paragraph 17 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

18.    Denies the allegations contained in paragraph 18 of the Complaint. To the

extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

19.    Denies the allegations contained in paragraph 19 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

20.    Denies the allegations contained in paragraph 20 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

21.    Denies the allegations contained in paragraph 21 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

22.    Denies the allegations contained in paragraph 22 of the Complaint. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the

enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

23.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.    Admits that he terminated his employment with RBM on or about December 8, 2003 and without providing thirty (30) days notice; denies that thirty (30) days notice was required by the alleged Contract. To the extent that Plaintiff intends to rely on the existence of the Contract, Defendant specifically admits such language appears in the alleged Contract, but denies the satisfaction of conditions precedent to the taking effect of said Contract, denies the enforceability of said Contract, and denies the enforceability of such language in the alleged Contract.

25.    Denies the allegations contained in paragraph 25 of the Complaint.

26.    Admits that RBM Systems is now listed as the registrant of "rbmtechnologies.com; denies the remaining allegations contained in paragraph 26 of the Complaint.

27.    Admits the allegations contained in paragraph 27 of the Complaint.

28.    Admits that RBM Systems is now listed as the registrant of "rbmtechnologies.com; denies the remaining allegations contained in paragraph 28 of the Complaint.

29.    Admits the allegations contained in paragraph 29 of the Complaint.

30.    Admits contacting Dotster, Inc. on or about December 23, 2003 regarding the domain name "rbmtechnologies.com," but denies the remaining allegations contained in paragraph 30 of the Complaint.

31.    Denies the allegations contained in paragraph 31 of the Complaint.

32.    Admits that after December 23, 2003, the screen attached and incorporated by reference to the Complaint as Exhibit D was displayed when the "rbmtechnologies.com" website was accessed, but denies the remaining allegations contained in paragraph 32 of the

Complaint.

33.    Admits that after December 23, 2003, RBM's website no longer functioned and that RBM's e-mail communications did not operate, but denies the remaining allegations contained in paragraph 33 of the Complaint.

34.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the Complaint.

35.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the Complaint.

36.    Denies the allegations contained in paragraph 36 of the Complaint.

37.    Denies the allegations contained in paragraph 37 of the Complaint.

## COUNT I – BREACH OF CONTRACT

38.    Paragraphs 1 through 37 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

39.    Denies the allegations contained in paragraph 39 of the Complaint.

40.    Denies the allegations contained in paragraph 40 of the Complaint.

41.    Denies the allegations contained in paragraph 41 of the Complaint.

42.    Denies the allegations contained in paragraph 42 of the Complaint.

43.    Denies the allegations contained in paragraph 43 of the Complaint.

44.    Denies the allegations contained in paragraph 44 of the Complaint.

45.    Denies the allegations contained in paragraph 45 of the Complaint.

46.    Denies the allegations contained in paragraph 46 of the Complaint.

47.    Denies the allegations contained in paragraph 47 of the Complaint.

48.    Denies the allegations contained in paragraph 48 of the Complaint.

## COUNT II - CONVERSION

49.    Paragraphs 1 through 48 are hereby repeated and re-alleged with the same

force and effect as if fully set forth herein.

50.    Admits that RBM is the listed registrant of the Domain Name "rbmtechnologies.com" and the email addresses associated with such Domain Name, but denies the remaining allegations contained in paragraph 50 of the Complaint.

51.    Denies the allegations contained in paragraph 51 of the Complaint.

52.    Denies the allegations contained in paragraph 52 of the Complaint.

53.    Denies the allegations contained in paragraph 53 of the Complaint.

## COUNT III – MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION

54.    Paragraphs 1 through 53 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

55.    Denies the allegations contained in paragraph 55 of the Complaint.

56.    Denies the allegations contained in paragraph 56 of the Complaint.

57.    Denies the allegations contained in paragraph 57 of the Complaint.

58.    Denies the allegations contained in paragraph 58 of the Complaint.

59.    Denies the allegations contained in paragraph 59 of the Complaint.

60.    Denies the allegations contained in paragraph 60 of the Complaint.

61.    Denies the allegations contained in paragraph 61 of the Complaint.

62.    Denies the allegations contained in paragraph 62 of the Complaint.

## COUNT IV – DECLARATORY JUDGMENT

63.    Paragraphs 1 through 62 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

64.    Admits the allegations contained in paragraph 64 of the Complaint.

65.    Admits the allegations contained in paragraph 65 of the Complaint.

66.    Denies the allegations contained in paragraph 66 of the Complaint.

67.    Admits the allegations contained in paragraph 67 of the Complaint.

68.    Admits the allegations contained in paragraph 68 of the Complaint.

### COUNT V – VIOLATION OF G.L.C. 272 § 99 (Q)

69.    Paragraphs 1 through 68 are hereby repeated and re-alleged with the same force and effect as if fully set forth herein.

70.    Denies the allegations contained in paragraph 70 of the Complaint.

71.    Admits the allegations contained in paragraph 71 of the Complaint.

72.    Denies the allegations contained in paragraph 72 of the Complaint.

73.    Denies the allegations contained in paragraph 73 of the Complaint.

74.    Denies the allegations contained in paragraph 74 of the Complaint.

### PLAINTIFF'S PRAYER FOR RELIEF

75.    Denies each and every allegation contained in the Prayer for Relief ("WHEREFORE" clause), paragraphs lettered A through E, following paragraph 74 of the Fifth Count of the Complaint.

### AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE

76.    The Complaint and each purported cause of action contained therein fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

77.    Plaintiff's claims based on the alleged Contract, i.e., the written employment agreement allegedly entered into by Plaintiff and Defendant on or about August 1, 2001, are barred by the failure of consideration by Plaintiff in exchange for Defendant's alleged promises to perform.  Plaintiff never wanted to incur the costs of paying taxes and other costs related to payroll that would be required to hire Defendant as

an employee. Because Plaintiff never wanted to incur such costs, Plaintiff's promise to hire Defendant as an employee in the Contract was illusory at best and Plaintiff's claims based on such Contract fail for lack of consideration.

### THIRD AFFIRMATIVE DEFENSE

78.    In the event that the Court ultimately determines that the Contract was validly entered into, i.e., that the parties did in fact enter into a binding written employment agreement on or about August 1, 2001, Plaintiff's claims are barred by the fact that Plaintiff is in material breach of the alleged Contract. Plaintiff failed to meet and satisfy several of the material terms of such Contract and such failure to perform could not convert Defendant's status as an independent contractor for Plaintiff into that of an employee of Plaintiff. Accordingly, Plaintiff's claims are barred in whole or in part due to Plaintiff's material breach of the alleged Contract.

### FOURTH AFFIRMATIVE DEFENSE

79.    In the event that the Court ultimately determines that the Contract was validly entered into, i.e., that the parties did in fact enter into a binding written employment agreement on or about August 1, 2001, Plaintiff's claims are barred by the fact that Plaintiff failed to meet and satisfy several of the material terms of such Contract and such failure to perform could not convert Defendant's status as an independent contractor for Plaintiff into that of an employee of Plaintiff. Accordingly, Plaintiff's claims are barred in whole or in part by the doctrines of laches, estoppel, acquiescence and unclean hands, because Plaintiff is in material breach of the alleged Contract.

### COUNTERCLAIMS

**Facts Material To Defendant's Counterclaims**
**(As Against RBM Technologies, Inc.)**

80.    Counterclaim Plaintiff Lash is an experienced and highly skilled computer programmer and software developer who has the ability to develop, create and author original source code for software products.  Lash is also skilled at providing computer support services, such as the creation of computer graphic designs, network administration and general Internet technology administration.  Based upon his varied computer experience, Lash has been in demand as a consultant for his computer programming and software development abilities.

81.    Upon information and belief, Counterclaim Defendant RBM is a corporation which is in the business of marketing software products to third parties.

82.    On or about May 1, 2001, Counterclaim Defendant RBM hired Lash as an independent contractor to provide computer consulting services to RBM Technologies and its sister corporation RBM Systems.  Specifically, Counterclaim Defendant RBM hired Lash on an ongoing basis to be paid an hourly fee of $35 to assist with general software development, the creation of graphic designs, networking administration and general Internet technologies administration.  The parties did not put this arrangement into writing and they did not consider, discuss, or sign a separate writing governing the copyright ownership of any software developed by Lash.

83.    At all times while Lash was an independent contractor for Counterclaim Defendant RBM, Lash was paid by Counterclaim Defendant RBM's sister corporation RBM Systems.

84.    Shortly after hiring Lash as a consultant on an independent contractor basis, Counterclaim Defendant RBM showed him a mock-up of a website that displayed pictures of the interior of bank branches in the Quicktime VR software format and static

images of promotional materials (the "Mock-up"). Counterclaim Defendant RBM did not yet have a corresponding software program for the Mock-up and sought Lash's skills as a computer programmer and software developer to create the software to make the Mock-up an actual software program.

85.    Upon information and belief, the Mock-up was developed for Counterclaim Defendant RBM by an independent contractor, Ramsey Badawi.

86.    Upon information and belief, the Mock-up was never presented to any prospective clients.

87.    During May and June 2001, Lash developed and authored the source code for the Software on an independent contractor basis. The Software essentially brought the Mock-up and static images to life. Lash developed the Software as an independent contractor and it contained only his original ideas, source code and writing.

88.    The Software, in its current form, is over four hundred (400) pages in length, all originally and independently created and authored by Lash.

89.    On or about July 2001, Lash completed the graphical demonstration for the Software. During this month, adjustments to Lash's hourly rate and payment structure were made by Counterclaim Defendant RBM without any notice to Counterclaim Plaintiff Lash.

90.    On or about late July 2001 or early August 2001, Lash and Counterclaim Defendant RBM discussed a possible weekly salary payment structure, which would have provided Lash with a weekly salary of $1,350.    Following these discussions, Counterclaim Defendant RBM drafted an engagement letter that allegedly set forth the terms of Lash's proposed future employment relationship with Counterclaim Defendant

RBM (referred to herein and throughout Lash's Answer to Plaintiff and Counterclaim
Defendant RBM's Complaint as the "Contract"). (See Plaintiff's Complaint, Exh. A).

91.    The Contract drafted by Counterclaim Defendant RBM expressly provided
that Lash would not become an employee of Counterclaim Defendant RBM upon
execution of the Contract.

92.    The Contract expressly provided that Lash's employment by Counterclaim
Defendant RBM would only go into effect at an unspecified point in time in the future
when certain conditions precedent, some express, some implied, were satisfied.

93.    The Contract expressly provided that until certain conditions precedent
were satisfied, Lash was still to be considered and treated as an independent contractor.

94.    The Contract was executed by the parties in September, 2001.

95.    However, Lash never became an employee of Counterclaim Defendant
RBM because the conditions precedent were never satisfied.

96.    Counterclaim Defendant RBM continued to pay Lash under the pre-
existing independent contractor terms, with all such payments issued by Counterclaim
Defendant RBM's sister corporation RBM Systems, whereby Lash provided his
consulting services to Counterclaim Defendant RBM on a weekly retainer fee basis.

97.    Counterclaim Defendant RBM never agreed upon an annual salary with
Lash.

98.    Counterclaim Defendant RBM never satisfied the other implied conditions
precedent to the enforcement of the Contract.

99.    On several occasions after the signing of the alleged Contract, Lash
inquired as to when he would be placed on Counterclaim Defendant RBM's payroll as an

employee and was informed that this would not occur, in abrogation of the alleged
Contract.

100.    Counterclaim Defendant RBM has never withheld income taxes or FICA
from payments it made to Lash nor has it paid the employer's share of payroll taxes as
would have been required of Counterclaim Defendant RBM had it hired Lash as an
employee.

101.    Counterclaim Defendant RBM has at all times represented to the federal
and state governments that Lash is not its employee.

102.    Counterclaim Defendant RBM has at all times indicated it its workers
compensation returns that Lash is not its employee.

103.    Counterclaim Defendant RBM has never held Lash out as its employee.

104.    During October 2001, Lash continued to develop and revise the source
code for the Software, with the focus on developing a fully-featured software application
and final commercial product.  At the same time, Lash continued to provide general
computer consulting services to Counterclaim Defendant RBM's sister corporation, RBM
Systems.

105.    From November 2001 until January 2002, Lash continued to provide
consulting services to RBM Systems on a weekly retainer fee basis.

106.    In January 2002, Lash took a week-long vacation.    Counterclaim
Defendant RBM did not pay Lash during this vacation.

107.    From February 2002 through July 2002, Lash provided the majority of his
consulting services for the benefit of RBM Systems.

108.    On or about June 7, 2002, Counterclaim Defendant RBM informed Lash that Counterclaim Defendant RBM would be paying Lash a bonus by paying Lash for the Memorial Day holiday on May 27, 2002. Such bonus implied that Counterclaim Defendant RBM was paying Lash on a daily, rather than weekly basis, which Counterclaim Defendant RBM had suggested as a better model than hourly fees.

109.    During the latter half of 2003, Lash and Counterclaim Defendant RBM began to have numerous disagreements regarding the future prospects and future financial success of the Software and the possibility of bringing on a salesperson to specifically market the Software.

110.    In or about November 2003, Lash presented Counterclaim Defendant RBM with an expense sheet for the cost of a computer and various software programs purchased to aid with the development and creation of the Software. Counterclaim Defendant RBM refused to reimburse Lash for these items.

111.    On December 8, 2003, Lash provided Counterclaim Defendant RBM with written notice terminating his relationship with Counterclaim Defendant RBM and putting Counterclaim Defendant RBM on further notice of Lash's claim of ownership rights, including copyright ownership in and to the Software. (A true and correct copy of the December 8, 2003 letter is attached hereto as Exhibit 1).

112.    On or about December 23, 2003, Lash discovered that someone had logged into Counterclaim Defendant RBM's computer and email communications system and had been sending and receiving email at Lash's account without Lash's consent or knowledge.

113.    Upon information and belief, it was anticipated and understood by both Counterclaim Defendant RBM and Lash, at the time Lash gave notice of his intent to terminate his relationship with Counterclaim Defendant RBM, that Lash would be able to access his email communications at RBM for several weeks thereafter in order to inform clients of his departure.

114.    Upon information and belief, the unauthorized party who accessed Lash's email account on Counterclaim Defendant RBM's network is associated with Counterclaim Defendant RBM and was attempting to make changes to domain name registrations held by Counterclaim Defendant RBM by improperly assuming Lash's identity.

115.    Lash acted to reset certain passwords affiliated with the domain names registered in Counterclaim Defendant RBM's name out of concern that someone, namely an unauthorized third party, was illegally assuming his identity and attempting to damage or steal Counterclaim Defendant RBM's domain name registrations.

116.    Upon information and belief, the improper access of Lash's email account by a third party was at Counterclaim Defendant RBM's direction and acted to prevent Lash from receiving all of his email communications sent to that account.

117.    Upon information and belief, Counterclaim Defendant RBM has copied and distributed and is continuing to copy and distribute exact copies of Lash's Software to various financial institutions and retail establishments, including Harris Bank, Rockland Trust, Provident Bank, BMO Financial and AT&T Wireless.

118.    Upon information and belief, Counterclaim Defendant RBM has marketed and sold and is continuing to market and sell exact copies of Lash's Software to various

financial institutions and retail establishments, including Harris Bank, Rockland Trust, Provident Bank, BMO Financial and AT&T Wireless, thereby improperly representing Lash's software as its own and improperly profiting off of the marketing and selling of Lash's software, without compensating Lash for such unauthorized use.

119.    Upon information and belief, Counterclaim Defendant RBM's conduct with respect to the copying, distributing, marketing and selling of Lash's Software to third parties is a disclosure of Lash's trade secrets in the software and a violation of Lash's copyrights therein.

120.    At all times relevant hereto, Lash has complied in all respects with the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

121.    On or about December 2, 2003, Lash filed the necessary paperwork and fee to apply for the exclusive rights and privileges in and to the copyrights in the Software under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.  His registration in the Software is currently pending.

122.    Lash has never authorized Counterclaim Defendant RBM to copy, distribute, market and/or sell the Software.

123.    Lash has no adequate remedy at law.

## FIRST COUNTERCLAIM

### DECLARATORY JUDGMENT THAT CONTRACT IS VOID

124.    Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123 of the Counterclaim as though fully set forth herein.

125.    Counterclaim Plaintiff Lash and Counterclaim Defendant RBM dispute whether the Contract allegedly entered into by the parties to govern an employment relationship is valid.

126.    Pursuant to G.L. c. 231A and F. R. Civ. P. Rule 57, Counterclaim Plaintiff Lash alleges this cause of action for declaratory relief seeking to have this Court declare that the Contract is void due to Counterclaim Defendant RBM's failure to perform certain conditions precedent to the taking effect and enforceability of the Contract.

127.    An actual controversy has arisen between Counterclaim Plaintiff Lash and Counterclaim Defendant RBM regarding the enforceability and effect of this alleged Contract and the controversy is justiciable in character.

## SECOND COUNTERCLAIM

### BREACH OF CONTRACT

128.    Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123 and 125 through 127 of the Counterclaims as though fully set forth herein.

129.    As an alternative claim to Counterclaim Plaintiff Lash's First Counterclaim seeking a declaratory judgment that the alleged Contract is void, if the Court determines that Counterclaim Defendant RBM and Lash entered into a binding

employment Contract on or about August 1, 2001, it is in fact Counterclaim Defendant RBM, and not Lash, that materially breached the alleged Contract because Counterclaim Defendant RBM failed to perform certain conditions precedent to the Contract and therefore failed to materially perform the Contract.

130.     Accordingly, if the Court determines that Counterclaim Defendant RBM and Counterclaim Plaintiff Lash entered into a binding Contract on or about August 1, 2001, Lash properly anticipatorily repudiated the Contract by giving notice of his resignation due to Counterclaim Defendant RBM's failure to perform certain conditions precedent under the Contract and Lash has suffered damages as a result of Counterclaim Defendant RBM's material breach of that Contract, in an amount to be proven at trial.

## THIRD COUNTERCLAIM

### MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION

131.     Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123, 125 through 127, and 129 through 130 of the Counterclaims as though fully set forth herein.

132.     Counterclaim Plaintiff Lash has the exclusive right to possess and control exploitation of the Software Program he authored while working as an independent contractor for Counterclaim Defendant RBM, and he has taken steps to protect such trade secrets.

133.     By marketing, selling and distributing his Software Program to third parties, without his authorization and without proper remuneration to Lash, Counterclaim Defendant RBM has disclosed Lash's trade secrets in the Software Program to third parties in violation of its common law duty not to disclose this information or use it for Counterclaim Defendant RBM's own benefit.

134.    As a result of Counterclaim Defendant RBM's breach of its common law duty not to disclose trade secrets belonging to Lash, Lash has suffered and continues to suffer damages.

135.    This is a cause of action for the taking of trade secrets at common law and under G.L. c. 93 § 42A.

## FOURTH COUNTERCLAIM

### VIOLATION OF G.L.C. 272 § 99 (Q)

136.    Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123, 125 through 127, 129 through 130, and 132 through 135 of the Counterclaims as though fully set forth herein.

137.    A third party, using the email account usr4020@rbmtechnologics.com, directed by Counterclaim Defendant RBM, has accessed and continues to access Lash's email account without his authorization and has intercepted and continues to intercept email communications that were and are addressed to and intended for use by Lash.

138.    The email communications constituted "wire communications" as defined in G.L. c. 277 § 99 (B) (1).

139.    Counterclaim Defendant RBM's interception of Lash's email, through its own conduct or the conduct of the third party under Counterclaim Defendant RBM's control and direction, violated Lash's property or privacy interests in the contents of the emails.

140.    This is a cause of action for violation of G.L. c. 272 § 99 (Q).

## FIFTH COUNTERCLAIM

## VIOLATION OF ELECTRONICS COMMUNICATION PRIVACY ACT
## 18 U.S.C. §§ 2510 et seq.

141.    Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123, 125 through 127, 129 through 130, 132 through 135, and 137 through 140 of the Counterclaims as though fully set forth herein.

142.    A third party, directed by Counterclaim Defendant RBM or with Counterclaim Defendant RBM's permission, has accessed Lash's email account without his authorization and has intercepted email communications that were addressed to and intended for use by Lash.

143.    A third party, directed by Counterclaim Defendant RBM or with Counterclaim Defendant RBM's permission, attempted to change domain name registrations belonging to Counterclaim Defendant RBM by illegally assuming Lash's identity, by sending email communications from Lash's email account to the registrar of those domain names, Dotster, Inc., and by representing to Dotster, Inc., that such third party was really Lash.

144.    The email communications constituted "wire communications" as defined in 18 U.S.C. §§ 2510 et seq.

145.    Counterclaim Defendant RBM's interception of Lash's email, through its own conduct or the conduct of the third party under Counterclaim Defendant RBM's control and direction, violated Lash's property or privacy interests in the contents of the emails.

## SIXTH COUNTERCLAIM

### UNFAIR COMPETITION

146.    Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123, 125 through 127, 129 through 130, 132 through 135, 137 through 140, and 142 through 145 of the Counterclaims as though fully set forth herein.

147.    Counterclaim Plaintiff Lash has the right to possession of the Software Program he authored, while working as an independent contractor for Counterclaim Defendant RBM.

148.    By marketing, selling and distributing his Software Program to third parties, without his authorization and without proper remuneration to Lash, Counterclaim Defendant RBM has unfairly competed with Lash by misrepresenting to such third parties and possible clients that Counterclaim Defendant RBM owns the Software Program.

149.    As a result of Counterclaim Defendant RBM's conduct, it has unfairly competed with Lash and has prevented Lash from marketing, selling and distributing his Software Program to third parties.

150.    Lash has suffered and continues to suffer damages.

## SEVENTH COUNTERCLAIM

### COPYRIGHT INFRINGEMENT

151.    Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123, 125 through 127, 129 through 130, 132

through 135, 137 through 140, 142 through 145, and 147 through 150 of the Counterclaims as though fully set forth herein.

152. Counterclaim Defendant RBM has copied, advertised, sold, offered to sell and/or distributed unauthorized copies of Lash's copyright-protected Software.

153. Counterclaim Defendant RBM's aforementioned acts constitute infringement of Lash's Software, in violation of the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

154. Lash is informed and believes and therefore alleges that Counterclaim Defendant RBM's reproduction, sale and distribution of the Software was and is deliberate, willful and without regard to Lash's proprietary rights.

155. Counterclaim Defendant RBM's copyright infringement has caused, and will continue to cause, Lash to suffer substantial injuries, loss and damage to its proprietary and exclusive rights to the copyrights in the Software and further, has damaged Lash's business reputation and goodwill, diverted his trade and caused a loss of profits, all in an amount not yet ascertained.

156. Counterclaim Defendant RBM's copyright infringement, and the threat of continuing infringement, has caused, and will continue to cause, Lash repeated and irreparable injury. It would be difficult to ascertain the amount of money damages that would afford Lash adequate relief at law for Counterclaim Defendant RBM's acts and continuing acts. In addition, Lash's remedy at law is not adequate to compensate him for the injuries already inflicted and further threatened by Counterclaim Defendant RBM. Therefore, Counterclaim Defendant RBM should also be restrained and enjoined pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

157.   Lash has been unable to determine the exact value of the copyright-protected Software and therefore, has been unable to ascertain the resulting damages due him under the Copyright Act.  Counterclaim Defendant RBM has itself valued its current deals with consumers of the Software at $1,000,000 over the next two years and Counterclaim Defendant RBM has also suggested that the value of Counterclaim Defendant RBM is between $3 and $6 million dollars, in large part based upon the value of Counterclaim Plaintiff Lash's Software, which Counterclaim Defendant RBM unjustifiably claims as an asset of Counterclaim Defendant RBM.  Accordingly, Lash is entitled to an accounting from Counterclaim Defendant RBM of all revenue derived by Counterclaim Defendant RBM from sale and/or distribution of the Software, including all revenue diverted to Counterclaim Defendant RBM's sister company, RBM Systems.

## EIGHTH COUNTERCLAIM

### DECLARATORY JUDGMENT THAT LASH IS THE OWNER OF THE COPYRIGHT IN THE SOFTWARE

158.   Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123, 125 through 127, 129 through 130, 132 through 135, 137 through 140, 142 through 145, 147 through 150, and 152 through 157 of the Counterclaims as though fully set forth herein.

159.   Lash began creating, developing and writing the source code for the Software while working for Counterclaim Defendant RBM as an independent contractor, significantly, well before even the date when Counterclaim Defendant RBM alleges the Contract was entered into by the parties.

160.    Even after the parties entered into the Contract, certain conditions precedent existed that had to be satisfied before Lash's employment under the Contract took effect.    Counterclaim Defendant RBM never satisfied these implied conditions precedent and at all times continued to treat Lash as though he were an independent contractor for Counterclaim Defendant RBM and not an employee of Counterclaim Defendant RBM.

161.    The parties never discussed nor entered into any other written agreement that classifies Lash's relationship with Counterclaim Defendant RBM as that of work-made-for-hire under the United States Copyright Act.

162.    The allegation by Counterclaim Defendant RBM that it owns the copyright to the Software and its filing of a state action in the Commonwealth of Massachusetts alleging conversion of such Software and the theft of alleged trade secrets derived from Counterclaim Defendant RBM's alleged ownership has caused, and will continue to cause, irreparable harm to Lash, the Software and to Lash's business reputation and substantial goodwill represented thereby, and said acts and damage will continue unless restrained by this Court.    Lash, therefore, seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that it is the owner of the copyright to the Software.

163.    Lash has no adequate remedy at law.

## NINTH COUNTERCLAIM

### ACCOUNTING

164.    Counterclaim Plaintiff repeats, re-alleges and incorporate by reference the responses contained in paragraphs 1 through 79 as though fully set forth herein and repeats and re-alleges paragraph 80 through 123, 125 through 127, 129 through 130, 132

through 135, 137 through 140, 142 through 145, 147 through 150, 152 through 157, and 159 through 163 of the Counterclaims as though fully set forth herein.

165.    As a result of the actions of Counterclaim Defendant RBM complained of herein, Lash has been unable to determine the amounts that Lash has lost as a result of these actions.

166.    Accordingly, Lash is entitled to an accounting from Counterclaim Defendant RBM of all revenue derived by Counterclaim Defendant RBM by the unauthorized use of Lash's Software.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff prays for judgment against Counterclaim Defendant RBM as follows:

(A)    That the Court enter judgment in Counterclaim Plaintiff Lash's favor against Counterclaim Defendant RBM;

(B)    That the Court issue a judicial declaration on the First Counterclaim pursuant to 28 U.S.C. § 2201 that the alleged Contract is void, or in the alternative, that Counterclaim Defendant RBM materially breached such Contract should the Court find the Contract binding against the parties.

(C)    On the Eighth Counterclaim, that the Court issue a judicial declaration pursuant to 28 U.S.C. § 2201 that Lash is the owner of the copyright in the Software.

(D)    That Lash be awarded damages for Counterclaim Defendant's misappropriation of trade secrets and unfair competition in an amount to be determined at trial, together with Counterclaim Defendant's profits

derived from its unlawful misappropriation and disclosure of trade secrets in Lash's Software Program and its unfair competition with Lash;

(E)     That Lash be awarded damages for Counterclaim Defendant's copyright infringement, either: (i) actual damages in an amount to be determined at trial, together with Counterclaim Defendant's profits derived from its infringement of the Software; or (ii) statutory damages for each act of infringement in the amount provided by law, as set forth in 17 U.S.C. § 504, at Lash's election before the entry of a final judgment, together with prejudgment and post-judgment interest;

(F)     That the Court fine Counterclaim Defendant for its violations of G.L. c. 272 § 99 (Q) and 18 U.S.C. §§ 2510 et seq., pursuant to the fine structure of the respective statutes;

(G)     That the Court issue an Order requiring Counterclaim Defendant to provide an accounting of all revenue derived to date from the sale and/or distribution of the Software;

(H)     That the Court issue a permanent injunction enjoining Counterclaim Defendant and its officers, agents, servants, representatives, employees and all others in concert or participation with them, directly or indirectly, from infringing, inducing others to infringe, or contributing to the infringement of the Software;

(I)     That the Court issue an Order requiring Counterclaim Defendant to destroy all infringing copies of the Software at the conclusion of the present matter;

(J)     That the Court award Lash his costs and reasonable attorneys' fees and

        expenses in accordance with 35 U.S.C. § 285; and

(K)     That the Court award Lash such other and further relief as the

        circumstances of this case may require and as this Court may deem just

        and proper.


Dated: Boston, Massachusetts
       March 12, 2004


                                    Respectfully Submitted,

                                    ALBERT L. LASH, IV
                                    By his Attorneys,


                                    David Fanikos, Esq., BBO No. 564303
                                    DEMEO & ASSOCIATES, P.C.
                                    227 Lewis Wharf
                                    Boston, MA 02110
                                    Telephone: (617) 263-2600
                                    Facsimile: (617) 263-2300

                                    GRIMES & BATTERSBY, LLP
                                    Charles W. Grimes, Esq.
                                    Jessica L. Elliott, Esq.
                                    488 Main Avenue
                                    Norwalk, CT 06851
                                    Telephone: (203) 849-8300
                                    Facsimile: (203) 849-9300

                                    Attorneys for Defendant
                                    Albert L. Lash, IV

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Defendant's and Counterclaim Plaintiff's Answer, Affirmative Defenses and Counterclaims to Plaintiff and Counterclaim Defendant's Complaint, has been served upon Plaintiff and Counterclaim Defendant RBM Technologies, Inc., on this 12th day of March 2004, via U.S. Mail, First Class, postage prepaid, to:

George A. McLaughlin, Esq.
THE MCLAUGHLIN BROTHERS, P.C.
28 State Street, 31st Floor
Boston, MA 02109


David Fanikos, Esq.